IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RAYMOND M. RIZZI, D.P.M., | ) |
|     Plaintiff, | ) |
| v. | ) No. 4:23-cv-00006-DGK |
| MICHAEL HALL, M.D., REBECCA H. ALLISON, & ENCOMPASS MEDICAL GROUP, P.C., | ) |
|     Defendants. | ) |

## ORDER GRANTING MOTION TO DISMISS

This lawsuit arises from Plaintiff Dr. Raymond Rizzi's employment with Defendant Encompass Medical Group, P.C. ("Encompass"). Beginning in 2012, Plaintiff worked for Encompass pursuant to an employment agreement and then, from 2021 until his termination, under a revised employment agreement. After Defendant Dr. Michael Hall ("Hall") became president of Encompass, the relationship between the parties deteriorated. Encompass eventually terminated Plaintiff. Plaintiff responded by suing Defendants for breach of contract, various financial torts, and defamation.

Now before the Court is Defendants' 12(b)(6) motion to dismiss for failure to state a claim. ECF No. 8. Because the Petition[1] fails to state a claim, the motion is GRANTED. Plaintiff's claims are dismissed without prejudice.

**Standard of Review**

A claim may be dismissed if it fails "to state a claim upon which relief can be granted."

---

[1] Although in federal court the initial pleading is called a "complaint" instead of a "petition," because this case was removed from Missouri state court where the initial pleading is called and captioned a petition, the Court uses that term to avoid confusion.

Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008) (cleaned up). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

**Background**

The Petition alleges Encompass hired Plaintiff in 2013 to work as a podiatrist in its clinics under the terms of an employment agreement (the "Agreement"). Pet. ¶ 5, ECF No. 1-1. The Agreement required Plaintiff to work full-time for Encompass and provided that all of Plaintiff's billings were to go through Encompass. Agreement § 1.3, ECF No. 9-1 ("Employee . . . shall not directly or indirectly engage in, carry on or be employed by any other business or profession that interferes with Employee's practice of medicine on behalf of Employer . . . . All amounts paid by any persons or entities for professional services rendered by Employee shall be turned over to and be the property of Employer."). From the Agreement's inception, however, Plaintiff has been

performing care at non-Encompass facilities, including two facilities which he operated, Centerpoint Advanced Wound Care and Centerpoint Surgery Center (collectively "Centerpoint"). Pet. ¶¶ 6–8, 28, 31. Encompass knew this and never objected. Pet. ¶¶ 6, 8, 28, 31.

After Defendant Hall became the president of Encompass, Defendants began complaining about the propriety of this arrangement. Pet. ¶ 31. At Hall's behest, Encompass's CEO, Defendant Rebecca Allison, then "unilaterally" forced a new financial arrangement on Plaintiff by threatening to terminate him unless he agreed to amend the Agreement so that Encompass would handle all of Plaintiff's outside billings. Pet. ¶ 32. On February 15, 2021, Plaintiff signed an Amendment to the Agreement ("the Amendment"), referenced in the Petition, authorizing him to take home a percentage of receipts earned outside of Encompass, but placing Encompass in charge of all billings. Pet. ¶¶ 32-33; Amendment, ECF No. 9-2. The new arrangement was essentially a 50%-50% split on Plaintiff's outside fees. Pet. ¶ 33; Amendment § I.B.

On or about October 26, 2021, Encompass notified Plaintiff that it was terminating his employment without cause pursuant to the Agreement. Pet. ¶¶ 32, 42; Agreement § 3.2 ("Either party hereto shall have the right to terminate this Agreement, without cause, at any time during the term of this Agreement by giving sixty (60) days prior written notice to the other party.")

Plaintiff filed this lawsuit in the Circuit Court of Jackson County, Missouri, and Defendants subsequently removed it to federal court pursuant to diversity jurisdiction. The Petition brings claims for tortious interference with business expectancies (Count I), breach of contract (Count II), quantum meruit (Count III), unjust enrichment (Count IV), recission and restitution (Count V), slander and defamation (Count VI), and conversion (Count VII).

3

**Discussion**

**A. A combination of Kansas and Missouri law governs Plaintiff's claims.**

The first issue for the Court concerns which state's law applies to which claims. Defendant argues a mix of law applies; Plaintiff contends Missouri law governs all his claims.

As Defendant notes, "[f]ederal courts sitting in diversity apply the choice-of-law rules of the forum state. Under Missouri law, a choice of law clause in a contract generally is enforceable unless application of the agreed-to law is contrary to a fundamental policy of Missouri." Suggestions in Supp. at 9, ECF No. 9 (quoting *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015).). The Agreement contains a choice-of-law provision stating that it "shall be governed by the laws of the State of Kansas," and its application is not contrary to a fundamental policy of Missouri. Agreement ¶ 6.6. Thus, Kansas law governs its interpretation.

Under Missouri's choice-of-law rules, this also means Kansas law governs several of Plaintiff's claims. "In Missouri, whether a choice-of-law provision that, by its terms, applies to contract actions also reaches non-contract claims depends on whether resolution of the claim relates to interpretation of the contract." *Davis v. Citibank, N.A.*, No. 4:14 CV-1129-CDP, 2015 WL 928117, at *2 (E.D. Mo. Mar. 4, 2015). And when tort claims are "closely related to the interpretation of the contract," then the choice-of-law clause will reach both types of claims. *Bradbury v. Network Enters., Inc.*, No. 4:12 CV-575-CEJ, 2013 WL 587884, at *1 (E.D. Mo. Feb. 13, 2013) (applying choice-of-law clause selection to claims for tortious interference with contract and unjust enrichment); *see also Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997) (applying choice-of-law selection to unjust enrichment claim because it is "closely related to the interpretation of the contracts and fall[s] within the ambit of the express agreement" of the choice-of-law provision). Because resolution of Plaintiff's claims for breach

4

of contract, quantum meruit, unjust enrichment, and recission and restitution are integrally related to interpretation of the Agreement, and what is contained or not contained in the Agreement, Kansas law governs these claims. The remaining claims are governed by Missouri law.

Plaintiff's arguments, including his assertion that under *Erie Railroad Company v. Thompkins*, 304 U.S. 64 (1938), the Court must apply Missouri law to all of Plaintiff's claims, are not persuasive.

### B. The Petition fails to state a claim for tortious interference with a business expectancy.

Count I asserts a claim for tortious interference with business expectancy against all Defendants. This claim is governed by Missouri law, and under Missouri law the elements are: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference by the defendant inducing or causing a breach of the expectancy; (4) absence of justification; and (5) damages." *Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. 2017). Defendants argue the Petition fails to plead the first, third, and fourth elements.

Plaintiff responds that he has pled "ample specific ultimate facts which must be presumed to be true for purposes of evaluating whether enough has been alleged to state a cause of action," and that Defendants are impermissibly "resorting to documents outside the pleadings," apparently meaning the Amendment. Suggestions in Opp'n at 11, ECF No. 11.

As a threshold matter, the Court may consider the Amendment since it is a document that is "necessarily embraced by the pleadings." *Miller*, 688 F.3d at 931. And although the Petition routinely makes conclusory references to ultimate facts, it frequently fails to plead sufficient *specific* facts, a defect which leaves it ripe for a motion to dismiss. That said, the Court rules as

5

follows with respect to the elements of Plaintiff's tortious interference claim.

First, it fails to plead a valid business expectancy. "In order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged. If it is not, there was nothing for defendants to have interfered with." *Gott v. First Midwest Bank of Dexter*, 963 S.W.2d 432, 438 (Mo. Ct. App. 1998). "A business expectancy that is contrary to the terms of a contract on which the expectancy depends is unreasonable." *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 251 (Mo. 2006). Plaintiff claims the interference occurred in 2019, 2020, and 2021 when he was employed by Encompass and the Agreement expressly prohibited him from operating an outside private practice. Hence, Plaintiff's references to a business expectancy in the Petition—such as his interest in his income and billings from his outside medical practice—runs counter to the terms of the Agreement and is unreasonable.

Second, Plaintiff has not sufficiently pled Defendants' intentional interference with any alleged expectancy. As the Missouri Supreme Court has observed,

> Under Missouri law, no liability arises for interfering with a contract or business expectancy if the action complained of was an act that the defendant had a definite legal right to do without any qualification. A company is justified in attempting to enforce its rights under a non-compete agreement so long as it has a reasonable, good faith belief in the validity of the agreement.

*Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 614 (Mo. 2006). "If the defendant has a legitimate interest, economic or otherwise, in the expectancy plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his or her own interests." *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 20 (Mo. 2012) (holding no party can interfere in a business in which it has a legitimate expectancy). Here,

6

Encompass had a contractual right to direct where Plaintiff provided services and to the payments generated by his work at any location, including Centerpoint. Encompass could not interfere with its own business expectancy.

Third, Plaintiff has not sufficiently alleged lack of justification. When, as in this case, the defendant has a legitimate economic interest in the expectancy the plaintiff seeks to protect, then the plaintiff must show the defendant employed improper means, such as defamation, to further only his own interests. *Stehno*, 186 S.W.3d at 252. The plaintiff carries the burden of showing this lack of justification. *Id*. Plaintiff has not met his burden here. Although he has alleged an improper means, defamation by Dr. Hall, this allegation is insufficient with respect to Defendants Encompass and Allison, because no facts are pled in support of the Petition's conclusory allegation that they sanctioned or approved Dr. Hall's conduct. More importantly, Plaintiff cannot show lack of justification because, as discussed in Section E below, Plaintiff has failed to plead the existence of any defamatory statements. All of the alleged defamatory statements are either too vague or not defamatory as a matter of law.

Count I is dismissed.

**C.  The Petition fails to state a claim for breach of contract.**

Count II alleges breach of contract against Defendants Encompass and Allison. This claim is governed by Kansas law, and under Kansas law the elements are: "(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff suffered damage caused by the breach." *Ryan Dev. Co., L.C. v. Indiana Lumbermens Mut. Ins. Co.*, 783 F. Supp. 2d 1179, 1182 (D. Kan. 2011).

As an initial matter, this claim fails against Allison because the Petition does not allege that

Plaintiff and Allison ever had a contract.

This claim fails with respect to all three Defendants because the Petition fails to identify any contract provision Defendants allegedly breached. Although Plaintiff complains Encompass did not give him an accounting and it breached a fiduciary relationship with him, nothing in the contract requires Encompass to provide an accounting or places it in a fiduciary relationship with Plaintiff. While not providing an accounting or breaching a fiduciary relationship can be the basis for other causes of action, such allegations are not the basis for a breach of contract claim here.

Count II is dismissed.

### D. The Petition fails to state a claim for quantum meruit, unjust enrichment, and rescission and restitution.

Defendant contends the claims for quantum meruit (Count III), unjust enrichment (Count IV), and rescission and restitution (Count V) fail because under Kansas law these causes of action are not available when there is a valid, written contract. Plaintiff responds that these are merely alternative causes of action to submit to the jury in the event no contract is found.

The Petition pled the existence of a contract, and Defendants vehemently agree there is a contract. Thus, these equitable claims must fail. *See Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996) ("Courts applying Kansas law have concluded that quantum meruit and restitution are not available theories of recovery when a valid, written contract addressing the issue exists."); *Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1175 (D. Kan. 2017) (holding plaintiffs may not recover under a theory of unjust enrichment when a contract controls the relationship between the parties); *Nordstrom v. Miller*, 605 P.2d 545, 554 (1980) ("Rescission is an equitable remedy designed to afford relief

8

from contracts entered into through mistake, fraud or duress.").[2]

Counts III, IV, and V are dismissed.

### E. The Petition fails to state a claim for slander and defamation.

Count VI alleges a claim for slander and defamation against Dr. Hall.[3] The allegations here can be grouped into three sets. First, allegations that Dr. Hall made unspecified "comments both orally and in writing regarding Dr. Rizzi's professional competence" to individuals "in the local medical community who might otherwise send Plaintiff patient referrals." Pet. ¶ 74. Second, that Dr. Hall "specifically accused Plaintiff of the crime of felony stealing and repeated the allegation to staff and third parties though the allegation of this crime was known by Defendant Hall to be false." Pet. ¶ 71. Third, that Dr. Hall made two specific comments about Plaintiff's professional skills. Paragraph 72 alleges that in March of 2021, Dr. Hall told an elderly patient of Plaintiff's that, "So Dr. Rizzi is who you are seeing and what you really need is a real doctor now." And paragraph 73 alleges that in November of 2021, Dr. Hall told a physician that renting office space and facilities to Plaintiff would be unwise "since Rizzi is nothing but trouble and too lazy to work hard enough to pay the rent. He will bring you nothing but issues and trouble."

Defendants contend the unspecified comments are insufficient to state a claim, and that the two specific comments are statements of opinion under Missouri law for which there is no liability.

Plaintiff does not respond to Defendants' assertion that the unspecified comments in the

---

[2] Although the Petition makes a conclusory allegation that the Amendment was "made under duress and threat of Plaintiff's termination and therefore was not voluntarily made," Pet. ¶ 59, this conclusory statement is insufficient to plead duress under Kansas law. *See Comeau v. Mt. Carmel Med. Ctr., Inc.*, 869 F. Supp. 858, 865 (D. Kan. 1994) (identifying three elements for economic duress).

[3] Although slander (an untrue defamatory statement that is spoken orally) and defamation (an untrue statement made in writing or orally) are separate causes of action, the elements of each are identical under Missouri law. So the record is clear, the Court treats Count VI as a defamation claim only and so refers to it as defamation. *Compare Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000) (stating defamation elements) *with Custom Hardware Eng'g & Consulting, Inc. v. Dowell*, 919 F. Supp. 2d 1018, 1034 (E.D. Mo. 2013) (stating the same elements).

first group are too vague to survive a motion to dismiss but argues the allegation of felony stealing is actionable. Plaintiff also argues the specific comments are actionable under *Topper v. Midwest Division, Inc.*, 306 S.W.3d 117, 129–30 (Mo. Ct. App. 2010).

The Court rules as follows. The allegations in the first category concerning unspecified "comments both orally and in writing" regarding Dr. Rizzi's competence made to people in the local medical community are too vague to survive a motion to dismiss. They fail to provide any facts about either the comments or the audience; they are only slightly better than bald conclusions. *See Brown v. Circle*, No. 2:19-CV-04135-NKL, 2019 WL 6720494, at *4 (W.D. Mo. Dec. 10, 2019) (dismissing defamation claim where the complaint merely alleged defendant communicated defamatory statements "to third-parties, including, but not limited to, Defendants, Defendant's employees, and the public").

The allegations in the second category are a closer call since they are somewhat more specific, but an allegation that Dr. Hall repeated some unspecified accusation that Plaintiff stole to unidentified "staff and third parties" (which could pretty much be anyone) is the sort of "naked assertions devoid of further factual enhancement" that *Iqbal* is designed to curtail. *Iqbal*, 556 U.S. at 678.

While the allegations in the third set are pled with sufficient particularity, they fail to state a claim because they are not defamatory statements; they are statements of opinion as a matter of law. The Missouri Supreme Court has recognized that the First Amendment dictates that "there can be no liability under state defamation law for statements of opinion." *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 799 (Mo. 2017) (holding that defendant's allegations that plaintiff's dog kennel was "one of the 'worst puppy mills in Missouri'" was not defamatory because it was not a factual statement that could be proven or disproven). The allegedly

10

defamatory statements here—that Plaintiff is not a "real doctor" and is "nothing but trouble and too lazy to work hard enough to pay the rent" and will only bring "issues and trouble"—are analogous to those in *Smith*. While these statements have negative connotations and one could imagine metrics whereby a jury could objectively measure them, they cannot reasonably be interpreted as asserting actual, objective facts which can be proven false. *See id*. at 800–802. Hence, they are not actionable as defamatory.

Count VI is dismissed.

### F. The Petition fails to state a claim for conversion.

Count VII alleges conversion against all three Defendants. Under Missouri law, to establish a claim for conversion a plaintiff must prove: "(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 596 (Mo. Ct. App. 2000). Actions for conversion are normally limited to personal property, but "funds placed in the custody of another for a specific purpose" and then diverted may give rise to a claim for conversion. *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. 1981). That is, the plaintiff must identify specific chattel placed into custody for a specific purpose. *See Express Scripts, Inc. v. Walgreen Co.*, No. 4:08-CV-1915-TCM, 2009 WL 4574198, at *5 (E.D. Mo. Dec. 3, 2009) (quoting *Dillard* and collecting cases).

In this case, the Petition alleges Defendants converted general "outside receivables, money, billings, and income" relating to services Plaintiff performed at Centerpoint. Pet. ¶¶ 79-81. It fails to state a claim here for two reasons. First, it fails to sufficiently describe or identify as specific chattel the money Defendants allegedly converted. In fact, from the Petition and

11

Agreement it appears Plaintiff entrusted no property to Encompass, but instead contracted that Encompass would have all ownership rights in receipts he generated at Centerpoint. Thus, Plaintiff's claim is only for conversion of money, which does not exist in Missouri.

Second, the Agreement eviscerates any claim Plaintiff has that he was the owner of this property or entitled to its possession. Under the Agreement (both before and after the Amendment), Encompass had the contractual right to sole ownership over all receipts Plaintiff generated at Centerpoint. Agreement ¶¶ 1.3, 1.4(b). Encompass cannot convert property it rightfully owns. Any property rights Plaintiff had in the receipts he generated at Centerpoint were transferred to Encompass pursuant to the Agreement.

Consequently, Count VII is dismissed.

## Conclusion

For the reasons discussed above, Defendants' motion to dismiss is GRANTED. All of Plaintiff's claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Date:    June 2, 2023                          /s/ Greg Kays
                                                           GREG KAYS, JUDGE
                                                           UNITED STATES DISTRICT COURT